IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| HSIN CHI SU, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CASE No. 14-2165 |
| § | JURY |
| MEGA INTERNATIONAL § | |
| COMMERCIAL BANK CO., LTD, in § | |
| its individual capacity and its capacity § | |
| as agent, § | |
| § | |
| Defendant. § | |

**HSIN CHI SU'S ORIGINAL COMPLAINT FOR DECLARATORY RELIEF**

Plaintiff, Hsin Chi Su ("Mr. Su"), for his complaint alleges, upon information and belief:

## I. JURISDICTION AND VENUE

1. Mr. Su asserts intellectual property rights with respect to the *M.V. C Whale* (the "Vessel"), regarding his patents awarded by Japan, Korea, and China (the "Alleged Su IP Claims"). Mr. Su asserted that neither the Bankruptcy Court nor any Court of the United States has jurisdiction to determine the validity or enforceability of a foreign patent. However, with Mr. Su's consent, the Bankruptcy Court ordered the sale of the Vessel free and clear of all Alleged Su IP Claims and further ordered that "[t]o the extent that this Court or the United States District Court for the Southern District of Texas (the "District Court") shall determine that: (i) Mr. Su has a valid claim against the estate in respect of the Alleged Su IP Claims, and (ii) the Debtor transferred property rights to the Buyer that did not lawfully belong to the Debtor, Mr. Su shall be entitled to recover such amounts from such Lenders as shall be determined to be equitable by this Court or the District Court."[1]

---

[1] *Order Approving Sale of the M.V. C Whale Free and Clear of Claims and Interests Pursuant to 11 U.S.C. 363*, ¶ 5,

{851208-00007 HHM 7/24/2014 00891466.DOCX 1}151914-00019 MMH 4/11/2014 00079212.DOCX 1}   1

2. Mr. Su acknowledges that this Court has jurisdiction to order damages Mr. Su is entitled to from the Lenders. However, if the validity and/or enforceability of Mr. Su's patents are contested by the Defendant, such issue can only be determined by the courts in the countries where those patents were issued. If this occurs, Mr. Su will ask the Court to abate this proceeding pending a ruling from the courts of Japan, Korea and China as to the validity and enforceability of the patents.

3. To the extent the Court addresses damages Mr. Su is entitled to from Defendant, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 2201, 2202 and 1338 and venue is proper in this Court under 28 U.S.C. §§ 1391(b) and (c).

4. To the extent the Court addresses damages Mr. Su is entitled to from Defendant, Mr. Su consents to the entry of a final judgment on all matters in this proceeding.

5. Pursuant to Fed. R Civ. P. 38, Mr. Su demands a jury trial.

## II. PARTIES

6. Plaintiff, Hsin Chi Su ("Mr. Su" or "Plaintiff"), is an individual who brings this action in his individual capacity, in his capacity as a guarantor of certain debts owed by the Defendant, in his capacity as the holder of several patents on technology included in the Vessel, and in his capacity as director of the equity holders, some of whom are also creditors of the debtors in the approximate amount of $250 million, of all of the debtors in the jointly administered bankruptcy proceeding *In re TMT Procurement Corp., et al*. Case No. 13-33763 pending in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Case").

7. Defendant, Mega International Commercial Bank Co., Ltd. in its individual capacity and its capacity as agent for various lenders (including Oaktree Capital which is the

---

Bankruptcy Docket No. 1721; s*ee also* Bankruptcy Docket No. 1703 (collectively, the "Sale Order").

{851208-00007 HHM 7/24/2014 00891466.DOCX 1}151914-00019 MMH 4/11/2014 00079212.DOCX 1}   2

majority lender) ("Defendant" or "Mega Bank") is a financial institution existing under the laws of China, having a principal place of business at No. 100, Chi-lin Rd., Taipei City 10424 Taiwan with branches in New York City and Los Angeles.  On information and belief, Defendant is doing business in this district including participating in the Bankruptcy Case.  Defendant may be served at Mega International Commercial Bank Co., Ltd., Attn: Kuang-Si Shiu, President, 65 Liberty Street, New York, NY 10005.  A copy of this complaint will also be forwarded to Defendant's attorneys of record in the Bankruptcy Case – Charles S. Kelley, Mayer Brown, LLP, 700 Louisiana Street, Suite 3400, Houston, Texas 77002.

### III. FACTUAL BACKGROUND

8. On or about 2007, Mr. Su applied for patents in Japan, Korea and China covering his invention related to piping structure for ships which were later granted.  The priority for the patents relate back to 2006.  Collectively, the Japanese, Korean, and Chinese Patents are referred to herein as the Asian Patents.

9. In the year 2010, TMT Co., Ltd. made a presentation to a syndicate of 26 banks located in Taiwan to finance the purchase of multiple ships, one of which was the Vessel.  The syndicate consisted of the lenders who originally made the ship loans.  Most of the syndicate banks have sold their loans to competitors of TMT Co., Ltd.

10. The presentation included a detailed description of Mr. Su's patented design for pipelines installed inside the hull instead of on the outside.   Mr. Su's Asian Patent claims the invention that is incorporated in the Vessel.

11. The lenders approved the loans and Mr. Su used a separate borrowing entity for the purchase of each ship.  Therefore, each entity has a separate set of loan documents.  None of the loan documents contain a single word about patents, intellectual property or related licenses.

As a result, the loan documents do not require and cannot be construed to require Mr. Su to convey his patent to the borrowers or enter into licenses permitting the borrowers to use his design.

12. Mr. Su caused C Whale Corporation (sometimes referred to as "Debtor") to obtain the loan from Mega Bank to purchase the Vessel.

13. On or about March 30, 2007, Mr. Su directed Hyundai Heavy Industries Co., Ltd. (the "Shipbuilder") to build the Vessel instructing the Shipbuilder to incorporate his patented designs related to the under deck piping structure for an oil tanker. There was no transfer of the Asian Patents or any related intellectual property to the Shipbuilder.

14. Because Mr. Su was the owner of the Debtor, he simply decided to allow the Debtor to use his patented technology free of any royalty or license fees and free of his right to sue for patent infringement. There are no written or oral agreements to this effect. Thus, there was nothing to disclose in the Debtor's schedules or the statement of financial affairs about intellectual property.

15. Finally, Mr. Su never decided to allow any party, other than certain of his own companies, to use the design covered by his patents.

16. On June 20, 2013, the Debtor, along with multiple related entities, initiated its Chapter 11 bankruptcy case which is jointly administered under Case No. 13-33763 in order to stop collection activities including arrest of the Vessel.

17. On November 18, 2013, the Debtor moved for release of the Vessel and requested to use cash collateral and/or DIP funds to satisfy costs.[2] On December 5, 2013, the Bankruptcy Court authorized use of cash collateral.[3]

---

[2] *See* Bankruptcy Docket No. 738.
[3] *See* Bankruptcy Docket No. 832

18. On May 29, 2014, the Debtor filed its motion to approve sale of the Vessel "free and clear" of all interests to Mega Bank or its nominee with a credit bid of $58,450,000 subject to better and higher bids.[4] On June 12, 2014, Mr. Su filed his objection asserting, among other things, that the Bankruptcy Court lacked jurisdiction to sell the Vessel free and clear of his foreign intellectual property rights because a United States court cannot judge the validity, infringement or enforceability of a foreign patent.[5]

19. Mr. Su notified C Whale Corporation and brokers hired to sell the Vessel of his patent claims.

20. During the sale hearing, Mr. Su consented to the sale free and clear of his patents so long as any claims Mr. Su may have regarding the patents against the lenders would be preserved. Therefore, the Bankruptcy Court approved the sale of the Vessel free and clear of any interests, stating:

> Subject to the terms and provisions of this Order, Mr. Su withdraws his objection to the sale of the Vessel based upon the Alleged Su IP Claims, without prejudice to Mr. Su's rights to assert the Alleged Su IP Claims only against the estate, the lenders under that certain syndicated facility related to the Vessel facility agreement, and/or any participants who purchased interests in the Mega Claim (the "Lenders") subject to a determination of the validity, extent and priority of any such claims, or ownership interests if so determined by this Court or the District Court.[6]
>
> \*   \*   \*
>
> To the extent that this Court or the United States District Court for the Southern District of Texas (the "District Court") shall determine that: (i) Mr. Su has a valid claim against the estate in respect of the Alleged Su IP Claims, and (ii) the Debtor transferred property rights to the Buyer that did not lawfully belong to the Debtor, Mr. Su shall be entitled to recover such amounts from such Lenders as shall be determined to be equitable by this Court or the District Court."[7]

---

[4] *See* Bankruptcy Docket No. 1620.
[5] *See* Bankruptcy Docket No. 1688. *See also Brief of Hsin Chi ("Nobu") Su on Issue of Whether Vessels Can Be Sold Free and Clear of His Patent Rights*, Bankruptcy Docket No. 1794.
[6] Sale Order, ¶ H.
[7] Sale Order, ¶ 5.

21. Based on the Bankruptcy Court's rulings, Mega Bank, its nominee or a future buyer may operate the Vessel in China, Japan or Korea, without a license to use Mr. Su's patent, in that the Bankruptcy Court's order extinguished Mr. Su's rights to sue Mega Bank, its nominee or a future buyer for patent infringement.

22. Absent an ability to sue future patent infringers in China, Korea and Japan, Mr. Su is entitled to the value of the loss of that right from Mega Bank and/or the lenders as provided for in the Bankruptcy Court order authorizing the sale.

## IV. ARGUMENT

**A. Mr. Su's patent rights were not property of the estate.**

23. Mr. Su holds a property interest in the Asian Patents that he owns and that were never transferred to the Debtor. This distinction was recognized in *In re The Clark Entertainment Group*, where the court held that intellectual property rights are separate and distinct from the material objects in which the work is embodied such that an owner has the power to convey ownership in the material object (e.g., a book) while reserving the common law copyright.[8] Hence, the court ruled that the debtor was the proper owner of the tapes (i.e. the material object), but that the debtor could not reproduce or distribute copies of the tapes to third parties. In the same manner, here, the Debtor granted the lenders a lien on the material objects (i.e. the Vessel) but not the Asian Patents. The lenders can sell, foreclose upon, or use the Vessel in any way they like so long as they do not infringe the rights owned by Mr. Su under the Asian Patents, which were never transferred to the Debtor or pledged as collateral to the lenders to secure Mr. Su's guarantees.

24. Stated another way, Mr. Su's Asian Patent are simply not part of the bankruptcy

---

[8] *In re The Clark Entertainment Group*, 183 B.R. 73, 79 (Bankr. D.N.J. 1995)

estate created by 11 U.S.C. § 541, nor are the proceeds allocable to the sale of his intellectual property rights. It has long been held that a debtor's estate succeeds to no more interest than the debtor had on the petition date and that the estate takes its interest subject to the condition under which the debtor held the interest.[9] Hence, it is clear that the estate in this case takes the Vessel subject to Mr. Su's patent rights as they existed on the petition date.

25. For example, in *Digeo, Inc. v. Audible, Inc.*, plaintiff Digeo, Inc. obtained rights in a patent through an assignment purchased from IPDN Corporation's bankruptcy estate.[10] Digeo later sued Audible, Inc. for infringement of this patent. Audible, Inc. argued its license from an inventor, previously believed to be deceased, was a complete defense to the infringement suit. The court found Digeo lacked sole legal title to the patent despite the bankruptcy sale of the patent because the bankruptcy court could not have sold what the debtor did not own.[11] The court further recognized that the bankruptcy sale order did not adjudicate ownership.[12] *See also In re Portrait Corp. of Am., Inc.*, 406 B.R. 637, 642 (Bankr. S.D.N.Y 2009) (abstaining from action where patent owner sued buyer of assets pursuant to § 363 for trademark infringement and recognizing that "Debtors could not have sold to [buyer] what they did not at least colorably own.").

26. Likewise, in this case, the Sale Order did not determine ownership of the Asian Patents. Mr. Su owned the Asian Patents and is now entitled to the value of those patent rights from Mega Bank and/or the lenders.

### B. Mr. Su is entitled to the value of the loss of his right to sue for future patent infringement.

---

[9] H.R.Rep. No. 595, 95th Cong., 1st Sess., reprinted in 1978 U. S. Code Cong. & Ad. News 5787 cited in *In re Lally*, 51 B.R. 204, 205 (N.D. Iowa 1985). *See, e.g. . In re Creative Data Forms, Inc.,* 41 BR 334 (BC ED Pa. 41 BR 334,) *affd* 72 BR 619 (ED Pa (1985, ED Pa); *In re Schauer,* 62 BR 526 (BC DC Minn. 1986).
[10] *Digeo, Inc. v. Audible, Inc.*, 2006 U.S. Dist. LEXIS 62994, *2 (W.D. Wash. 2006).
[11] *Id.* at *13-14.
[12] *Id.* at *14.

27. Since the Bankruptcy Court extinguished Mr. Su's ability to sue future patent infringers in China, Korea and Japan with regard to the Vessel, Mr. Su is entitled to the value of that right from Mega Bank and/or the lenders per the Bankruptcy Court's orders described above. Courts have held that the principal value of a patent is its statutory right to exclude others from a specific market.[13]

## V. SUIT FOR DECLARATORY JUDGMENT

28. Plaintiff repeats and realleges each of allegations set forth in paragraphs 1 – 27 as if set forth herein.

29. Plaintiff seeks entry of a judgment finding that Plaintiff is entitled to the monetary value of the loss of his intellectual property rights as defined above.

30. Plaintiff seeks entry of a judgment of no less than $100 million, plus interest at a rate of 8.25%.

31. Plaintiff seeks reasonable attorney fees, expenses and costs for bringing this action as allowed by law including 35 U.S.C. § 285.

## PRAYER

WHEREFORE, Plaintiff, prays for relief against Defendant as follows:

1. Declaring Plaintiff is immediately entitled to the monetary value of the loss of his right to sue;
2. Declaring Plaintiff should be paid no less than $100 million, plus interest at a rate of 8.25%;
3. Award of reasonable attorneys' fees, expenses and costs;
4. Such other relief that the Court deems just and equitable.

---

[13] *Polymer Techs. v. Bridwell*, 103 F.3d 970, 976 (Fed. Cir. 1996) (assessing whether preliminary injunction was warranted).

                                            Respectfully Submitted,

                                       By: */s/ Edward L. Rothberg*
                                                EDWARD L. ROTHBERG
                                                State Bar No. 17313990
                                                5847 San Felipe, Suite 2200
                                                Houston, Texas 77057
                                                Telephone: (713) 977-8686
                                                Facsimile: (713) 735-4135

OF COUNSEL:

Hoover Slovacek LLP
MELISSA A. HASELDEN
State Bar No. 00794778
DEIRDRE CAREY BROWN
State Bar No. 24049116
TX Federal ID: 570838
T. JOSH JUDD
State Bar No. 24036866
ANNIE E. CATMULL
State Bar No. 00794932
MAZELLE S. KRASOFF
State Bar No. 24078802
5847 San Felipe, Suite 2200
Houston, Texas 77057
Telephone: 713.977.8686
Facsimile:  713.977.5395