IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HSIN CHI SU, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE No. 14-2165 |
| | § | JURY |
| MEGA INTERNATIONAL COMMERCIAL BANK CO., LTD, in its individual capacity and its capacity as agent, CHINATRUST COMMERCIAL BANK CO., LTD., LAND BANK OF TAIWAN, CHANG HWA COMMERCIAL BANK CO., LTD., BANK SINOPAC COMPANY LIMITED, TAIWAN COOPERATIVE BANK LTD., FIRST COMMERCIAL BANK, TAIWAN SHIN KONG COMMERCIAL BANK, TAICHUNG COMMERCIAL BANK, JPMORGAN CHASE BANK, N.A., MACQUARIE BANK LIMITED, FORE ERISA MULTI STRATEGY MASTER FUND, LTD., OCM FORMOSA STRAIT HOLDINGS, LTD., C WHALE CORPORATION, AND PARTICIPATING LENDERS JOHN DOE(S) | § | |
| Defendant. | § | |

## HSIN CHI SU'S FIRST AMENDED ORIGINAL COMPLAINT

Plaintiff, Hsin Chi Su ("Mr. Su") respectfully would show:

## JURISDICTION AND VENUE

1. The countries of Japan, Korea, and China awarded Mr. Su patents on certain technology used by the *M.V. C Whale* (the "Vessel"). In 2013, the company that owned the Vessel filed a voluntary petition for chapter 11 bankruptcy in the U.S. Bankruptcy Court for the Southern District of Texas. No Court of the United States has jurisdiction to determine the

00895498.DOCX 1                                           1

validity or enforceability of a foreign patent. However, with Mr. Su's consent, the Bankruptcy Court ordered the sale of the Vessel free and clear of his patent rights.

2. The Bankruptcy Court further ordered that "[t]o the extent that this Court or the United States District Court for the Southern District of Texas (the "District Court") shall determine that: (i) Mr. Su has a valid claim against the estate in respect of the Alleged Su IP Claims, and (ii) the Debtor transferred property rights to the Buyer that did not lawfully belong to the Debtor, Mr. Su shall be entitled to recover such amounts from such Lenders as shall be determined to be equitable by this Court or the District Court."[1]

3. The U.S. District Court for the Southern District of Texas has jurisdiction to order damages Mr. Su is entitled to from the Defendants. However, if the validity and/or enforceability of Mr. Su's patents are contested by any Defendant, then such issue can be determined only by the courts in the countries where those patents were issued. If this occurs, Mr. Su will ask the Court to abate this proceeding pending a ruling from the courts of Japan, Korea and China as to the validity and enforceability of the patents.

4. To the extent the Court addresses damages Mr. Su is entitled to from Defendant, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 2201, 2202 and 1338 and venue is proper in this Court under 28 U.S.C. §§ 1391(b) and (c).

5. To the extent the Court addresses damages Mr. Su is entitled to from Defendant, Mr. Su consents to the entry of a final judgment on all matters in this proceeding.

6. Pursuant to Fed. R Civ. P. 38, Mr. Su demands a jury trial.

## PARTIES

7. Plaintiff, Hsin Chi Su ("Mr. Su" or "Plaintiff"), is an individual who brings this

---

[1] *Order Approving Sale of the M.V. C Whale Free and Clear of Claims and Interests Pursuant to 11 U.S.C. 363*, ¶ 5, Bankruptcy Docket No. 1721; s*ee also* Bankruptcy Docket No. 1703 (collectively, the "Sale Order").

action (i) in his individual capacity, (ii) in his capacity as a guarantor of certain debts owed to Defendant Mega Bank, (iii) in his capacity as the holder of several patents on technology included in the Vessel, and (iv) in his capacity as director of the equity holders of the Defendant Debtor some of whom are owed an approximate aggregate of $250 million by the Defendant Debtor (and other debtors who are not parties to this lawsuit) whose bankruptcies are jointly administered under Case No. 13-33763 , styled *In re TMT Procurement Corp., et al.*, pending in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Case").

8. Defendant, Mega International Commercial Bank Co., Ltd. in its individual capacity and its capacity as agent for various lenders (including Oaktree Capital which is the majority lender) ("Defendant" or "Mega Bank") is a financial institution existing under the laws of China, having a principal place of business at No. 100, Chi-lin Rd., Taipei City 10424 Taiwan with branches in New York City and Los Angeles.  On information and belief, Defendant is doing business in this district including participating in the Bankruptcy Case.  Defendant may be served at Mega International Commercial Bank Co., Ltd., Attn: Kuang-Si Shiu, President, 65 Liberty Street, New York, NY 10005.  A copy of this complaint will also be forwarded to Defendant's attorneys of record in the Bankruptcy Case – Charles S. Kelley, Mayer Brown, LLP, 700 Louisiana Street, Suite 3400, Houston, Texas 77002.

9. Defendant, Chinatrust Commercial Bank Co., Ltd., will be served care of their registered agent or pursuant to other applicable law.

10. Defendant, Land Bank of Taiwan, will be served care of their registered agent or pursuant to other applicable law.

11. Defendant, Chang Hwa Commercial Bank Co., Ltd., will be served care of their

registered agent or pursuant to other applicable law.

12. Defendant, Bank SinoPac, in its individual capacity and its capacity as agent for various lenders is a financial institution existing under the laws of Taiwan with a principal place of business at No. 36, Sec. 3, Nanking East Road, Taipei 104, Taiwan (R.O.C.) with a branch in Los Angeles. On information and belief, Defendant is doing business in this district including participating in the Bankruptcy Case. Defendant may be served at Bank SinoPac, Attn: Shiu Cheng Hsiung, Chairman, Wells Fargo Center-South Tower 355 South Grand Avenue, Suite 4168, Los Angeles, CA 90071. A copy of this complaint will also be forwarded to Defendant's attorneys of record in the Bankruptcy Case – David Parham, Baker McKenzie, LLP, 2300 Trammell Crow Center, 2001 Ross Avenue, Dallas, Texas 75201.

13. Defendant, Taiwan Cooperative Bank Ltd., will be served care of their registered agent or pursuant to other applicable law.

14. Defendant, First Commercial Bank, is believed to be doing business in this district including participating in the Bankruptcy Case. A copy of this complaint will be served on Defendant's attorneys of record in the Bankruptcy Case – Eli Omar Columbus, Winstead PC, 500 Winstead Building, 2728 N. Harwood Street, Dallas, Texas 75201.

15. Defendant, Taiwan Shin Kong Commercial Bank, will be served care of their registered agent or pursuant to other applicable law.

16. Defendant, Taichung Commercial Bank, will be served care of their registered agent or pursuant to other applicable law.

17. Defendant, JPMorgan Chase Bank, N.A., can be served with process by serving its registered agent at C.T. Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136.

18. Defendant, Macquarie Bank Limited, is believed to be doing business in this district including participating in the Bankruptcy Case. A copy of this complaint will be served on Defendant's attorneys of record in the Bankruptcy Case –Carey Schreiber, Winston Strawn LLP, 200 Park Ave., New York, NY 10166.

19. Defendant, Fore Erisa Multi Strategy Master Fund, Ltd., will be served care of their registered agent or pursuant to other applicable law.

20. Defendant, OCM Formosa Strait Holdings, Ltd., is believed to be doing business in this district as well as participating in the bankruptcy case. A copy of this complaint will be served on Defendant's attorneys of record in the Bankruptcy Case – Andrew Ehrlich, Paul, Weiss, Rifkind, Wharton & Garrison, 1285 Avenue of the Americas, New York, NY 10019-6064.

21. Defendant, Wilmington Trust, National Association can be served with process by serving its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

22. Defendant, C Whale Corporation is an entity organized under the laws of Liberia. Defendant can be served through its attorneys of record William A. Wood and Jason Cohen, Bracewell & Giuliani LLP, 711 Louisiana St., Suite 2300, Houston, Texas 77002.

23. Defendants Participating Lenders John Doe(s) is/are the lenders who participated in the C Whale loan but whose ident(ies) is/are unknown to Plaintiff.

**FACTUAL BACKGROUND**

24. On or about 2006 and 2007, Mr. Su applied for patents in Japan, Korea and China covering his invention related to piping structure for ships.

25. Japan, Korea, and China granted the patents to Mr. Su. Collectively, the Japanese,

Korean, and Chinese Patents are referred to herein as the "Asian Patents".

26. The priority for the Asian Patents relate back to at least 2006.

27. Mr. Su was a principal and person in control of TMT Co., Ltd.

28. In the year 2010, TMT Co., Ltd. made a presentation to a syndicate of 26 banks located in Taiwan to finance the purchase of multiple ships, one of which was the Vessel.

29. The syndicate consisted of the lenders who originally made the ship loan.

30. Most of the syndicate banks have sold their loans to competitors of TMT Co., Ltd and its related companies.

31. The 2010 presentation to the lender syndicate included a detailed description of Mr. Su's patented design for pipelines installed inside a vessel's hull instead of on the outside; i.e., the design that is covered by Mr. Su's Asian Patents.

32. The lenders approved the loans and Mr. Su used a separate borrowing entity for the purchase of each ship.

33. Therefore, each entity has a separate set of loan documents.

34. Mr. Su caused C Whale Corporation (sometimes referred to as "Debtor") to obtain the loan from Mega Bank to purchase the Vessel.

35. None of the loan documents contain a single word about patents, intellectual property or related licenses.

36. The loan documents do not require and cannot be construed to require Mr. Su to convey any patent to the borrowers (or to anyone else) or to enter into licenses permitting the borrowers (or anyone else) to use his designs that are protected by the Asian Patents.

37. On or about March 30, 2007, Mr. Su directed Hyundai Heavy Industries Co., Ltd. (the "Shipbuilder") to build the Vessel, instructing the Shipbuilder to incorporate his patented

designs related to the under deck piping structure for an oil tanker, designs protected by the Asian Patents.

38. Mr. Su did not transfer to the Shipbuilder (or to anyone else) the Asian Patents, a right or license therefor, covenant not to sue for patent infringement or any related intellectual property or contract right.

39. The Shipbuilder's incorporation of the patented designs did not exhaust, or cause the exhaustion of, any of the Asian Patents.

40. As the owner of Defendant Debtor, Mr. Su simply allowed the Defendant Debtor to use his design and technology protected by the Asian Patents free of any royalty or license fees. Accordingly, Mr. Su declined to sue for patent infringement. There were no written or oral agreements as to the arrangement.

41. Mr. Su never decided to allow any party, other than certain of his own companies, to use the design covered by the Asian Patents.

42. On June 20, 2013, the Debtor, along with multiple related entities, initiated its Chapter 11 bankruptcy case. Defendant Debtor's bankruptcy case is jointly administered under Case No. 13-33763. The bankruptcy cases were filed in order to stop collection activities including arrest of the Vessel.

43. On June 20, 2013 the Asian Patents were in full force and effect.

44. Since their approval in 2006 and 2007, the Asian Patents have remained in full force and effect, without interruption, through the present.

45. On November 18, 2013, the Debtor moved for release of the Vessel and requested to use cash collateral and/or DIP funds to satisfy costs.[2] On December 5, 2013, the Bankruptcy

---

[2] *See* Bankruptcy Docket No. 738.

Court authorized use of cash collateral.[3]

46.     On May 29, 2014, the Debtor filed its motion to approve sale of the Vessel "free and clear" of all interests to Mega Bank or its nominee with a credit bid of $58,450,000 subject to better and higher bids.[4]

47.     On June 12, 2014, Mr. Su filed his objection asserting, among other things, that the Bankruptcy Court lacked jurisdiction to sell the Vessel free and clear of his foreign intellectual property rights because a United States court cannot judge the validity, infringement or enforceability of a foreign patent.[5]

48.     Mr. Su notified Defendants and brokers hired to sell the Vessel of his patent claims.

49.     During the sale hearing, Mr. Su consented to the sale free and clear of his patents so long as any claims Mr. Su may have regarding the patents against the lenders would be preserved. Therefore, the Bankruptcy Court approved the sale of the Vessel free and clear of any interests, stating:

> Subject to the terms and provisions of this Order, Mr. Su withdraws his objection to the sale of the Vessel based upon the Alleged Su IP Claims, without prejudice to Mr. Su's rights to assert the Alleged Su IP Claims only against the estate, the lenders under that certain syndicated facility related to the Vessel facility agreement, and/or any participants who purchased interests in the Mega Claim (the "Lenders") subject to a determination of the validity, extent and priority of any such claims, or ownership interests if so determined by this Court or the District Court.[6]
>
> *     *     *
>
> To the extent that this Court or the United States District Court for the Southern District of Texas (the "District Court") shall determine that: (i) Mr. Su has a valid claim against the estate in respect of the Alleged Su IP Claims, and (ii) the Debtor

---

[3] *See* Bankruptcy Docket No. 832
[4] *See* Bankruptcy Docket No. 1620.
[5] *See* Bankruptcy Docket No. 1688. *See also Brief of Hsin Chi ("Nobu") Su on Issue of Whether Vessels Can Be Sold Free and Clear of His Patent Rights*, Bankruptcy Docket No. 1794.
[6] Sale Order, ¶ H.

transferred property rights to the Buyer that did not lawfully belong to the Debtor, Mr. Su shall be entitled to recover such amounts from such Lenders as shall be determined to be equitable by this Court or the District Court."[7]

50. Under the Bankruptcy Court's rulings approving the sales of the Vessels, each approved buyer may operate its respective purchased Vessel in China, Japan or Korea, without first obtaining permission and license from Mr. Su to use the technology and design protected by the Asian Patents.

51. Absent an ability to sue future patent infringers in China, Korea and Japan, Mr. Su is entitled to the value of the loss of that right from Mega Bank and the lenders as provided for in the Bankruptcy Court order authorizing the sale.

## ARGUMENT

**Mr. Su's patent rights were not property of the estate.**

52. Mr. Su holds a property interest in patents, including the Asian Patents that he owns in his individual capacity and that were never transferred to the Debtor Defendant. Mr. Su's patent rights are separate and distinct from the Vessel.

53. This distinction was recognized in *In re The Clark Entertainment Group*, where the court held that intellectual property rights are separate and distinct from the material objects in which the work is embodied such that an owner has the power to convey ownership in the material object (e.g., a book) while reserving the common law copyright.[8] Hence, the *Clark Entertainment* court ruled that the debtor was the proper owner of the tapes (i.e. the material object), but that the debtor could not reproduce or distribute copies of the tapes to third parties. In the same manner, here, the Debtor Defendant granted the lender a lien on the material object (i.e. the Vessel) but not upon the Asian Patents or upon any right to use technology or design

---

[7] Sale Order, ¶ 5.
[8] *In re The Clark Entertainment Group*, 183 B.R. 73, 79 (Bankr. D.N.J. 1995)

protected by the Asian Patents. The lender can sell, foreclose upon, or use the Vessel in any way it likes so long as it does not infringe on rights owned by Mr. Su under the Asian Patents, which (unlike the Vessel) were never transferred to the Debtor or pledged as collateral to the lender to secure Mr. Su's guarantee.

54. Stated another way, Mr. Su's Asian Patents, including rights to use the designs and technology protected by the Asian Patents, are not and were never part of the debtor's bankruptcy estate created by 11 U.S.C. § 541. Likewise, the sale proceeds allocable to his intellectual property rights are not property of the Debtor's bankruptcy estate. It has long been held that a debtor's estate succeeds to no more interest than the debtor had on the petition date and that the estate takes its interest subject to the condition under which the debtor held the interest.[9] Hence, the estate in the bankruptcy case that gives rise to this lawsuit took the Vessel subject to Mr. Su's patent rights as they existed on the date that the bankruptcy case was filed.

55. For example, in *Digeo, Inc. v. Audible, Inc.*, plaintiff Digeo, Inc. obtained rights in a patent through an assignment purchased from IPDN Corporation's bankruptcy estate.[10] Digeo later sued Audible, Inc. for infringement of this patent. Audible, Inc. argued its license from an inventor, previously believed to be deceased, was a complete defense to the infringement suit. The court found Digeo lacked sole legal title to the patent despite the bankruptcy sale of the patent because the bankruptcy court could not have sold what the debtor did not own.[11] The court further recognized that the bankruptcy sale order did not adjudicate ownership.[12] *See also In re Portrait Corp. of Am., Inc.*, 406 B.R. 637, 642 (Bankr. S.D.N.Y

---

[9] H.R.Rep. No. 595, 95th Cong., 1st Sess., reprinted in 1978 U. S. Code Cong. & Ad. News 5787 cited in *In re Lally*, 51 B.R. 204, 205 (N.D. Iowa 1985). *See, e.g. In re Creative Data Forms, Inc.,* 41 BR 334 (BC ED Pa. 41 BR 334,) *affd* 72 BR 619 (ED Pa (1985, ED Pa); *In re Schauer,* 62 BR 526 (BC DC Minn. 1986).
[10] *Digeo, Inc. v. Audible, Inc.*, 2006 U.S. Dist. LEXIS 62994, *2 (W.D. Wash. 2006).
[11] *Id*. at *13-14.
[12] *Id*. at *14.

2009) (abstaining from action where patent owner sued buyer of assets pursuant to § 363 for trademark infringement and recognizing that "Debtors could not have sold to [buyer] what they did not at least colorably own.").

56. Likewise, the Bankruptcy Court's sale order could not have determined ownership of the Asian Patents or rights to use design and technology protected by the Asian Patents. Mr. Su owns the Asian Patents and retains his rights to enforce the Asian Patents by, among other things, suing infringers regardless of the sale order.

**Mr. Su is entitled to the value of the loss of his right to sue for future patent infringement.**

57. Since the Bankruptcy Court extinguished Mr. Su's ability to sue future patent infringers in China, Korea and Japan with regard to the Vessel, Mr. Su is entitled to the value of that right from Mega Bank and/or the lenders per the Bankruptcy Court's orders described above. Courts have held that the principal value of a patent is its statutory right to exclude others from a specific market.[13]

## SUIT FOR DECLARATORY JUDGMENT

58. Plaintiff repeats and realleges each of allegations set forth in paragraphs 1 – 56 as if set forth herein.

59. Plaintiff seeks entry of a declaratory judgment that he has a valid claim against the bankruptcy estate of Defendant Debtor.

60. Plaintiff seeks entry of a declaratory judgment that his valid claim is entitled to administrative claim status under 11 U.S.C. §503 in the amount of the value of the loss of his intellectual property rights.

61. Plaintiff seeks entry of a declaratory judgment that Defendant Debtor transferred

---

[13] *Polymer Techs. v. Bridwell*, 103 F.3d 970, 976 (Fed. Cir. 1996) (assessing whether preliminary injunction was warranted).

property rights to a buyer that did not lawfully belong to Defendant Debtor.

62. Plaintiff seeks entry of a declaratory judgment that his alleged personal liability to lender Defendants shall be equitably adjusted downward, reduced, and offset in any amount equal to the value of his lost intellectual property rights plus interest, attorney fees, and costs.

63. To the extent the Bankruptcy Court sale orders disposed of, transferred, or diminished in any manner the patent rights of Plaintiff, Plaintiff seeks entry of a judgment:

  a. Awarding Plaintiff damages equal to the monetary value of the loss of his intellectual property rights as defined above in the amount of no less than $100 million, plus interest at a rate of 8.25%.; and

  b. Awarding Plaintiff the sale proceeds allocable to Plaintiff's intellectual property rights.

64. Plaintiff seeks reasonable attorney fees, expenses and costs for bringing this action as allowed by law including 35 U.S.C. § 285.

## EQUITABLE ADJUSTMENT

65. Plaintiff repeats and re-alleges each of the allegations set forth in paragraphs 1 – 63 as if set forth herein.

66. Plaintiff is entitled to an equitable adjustment of his guaranty liability, if any, to the Defendant lenders in an amount that is the greater of (i) the monetary value of the loss of his intellectual property rights, or (ii) the sale proceeds allocable to Plaintiff's intellectual property rights.

## UNJUST ENRICHMENT

67. Plaintiff repeats and re-alleges each of the allegations set forth in paragraphs 1 – 65 as if set forth herein.

68. At the time of the sales of the Vessel, the Defendants were on notice of Plaintiff's intellectual property rights, including the Asian Patents.

69. The Defendant lenders accepted the sale proceeds.

70. Defendant Debtor accepted the sale proceeds and/or the corresponding reduction of indebtedness from the Defendant lenders' receipt of the sale proceeds.

71. The Defendants had notice that Plaintiff expected compensation for any loss of his intellectual property rights that resulted from the sale of the Vessel.

72. Defendants were unjustly enriched by the sale of the Vessel.

73. To the extent that Bankruptcy Court sale orders disposed of, transferred, or diminished in any manner the patent or intellectual property rights of Plaintiff, Plaintiff seeks entry of a judgment:

   a. Awarding Plaintiff damages equal to the monetary value of the loss of his intellectual property rights as defined above in the amount of no less than $100 million, plus interest at a rate of 8.25%.; and

   b. Awarding Plaintiff the sale proceeds allocable to Plaintiff's intellectual property rights.

## MONEY HAD AND RECEIVED

74. Plaintiff repeats and re-alleges each of the allegations set forth in paragraphs 1 – 72 as if set forth herein.

75. At the time of the sales of the Vessel, the Defendants were on notice of Plaintiff's intellectual property rights, including the Asian Patents.

76. The Defendant lenders accepted the sale proceeds.

77. Defendant Debtor accepted the sale proceeds and/or the corresponding reduction

of indebtedness from the Defendant lenders' receipt of the sale proceeds.

78. Defendants had no interest in Plaintiff's intellectual property rights, including the Asian Patents.

79. Absent Plaintiff's consent, Defendants had no right to sell or participate in the sale of Plaintiff's intellectual property rights, including the Asian Patents.

80. The Defendants had notice that Plaintiff expected compensation for any loss of his intellectual property rights that resulted from the sale of the Vessel.

81. In equity and good conscience Defendants hold sale proceeds, or reduction of indebtedness from sale proceeds that belong to Plaintiff.

82. To the extent that the Bankruptcy Court sale orders disposed of, transferred, or diminished in any manner the patent or intellectual property rights of Plaintiff, Plaintiff seeks entry of a judgment:

    a. Awarding Plaintiff damages equal to the monetary value of the loss of his intellectual property rights as defined above in the amount of no less than $100 million, plus pre-judgment interest at a rate of 8.25%;

    b. Awarding Plaintiff the sale proceeds allocable to Plaintiff's intellectual property rights, including pre-judgment interest; and

    c. Awarding costs.

## PRAYER

WHEREFORE, Plaintiff, prays for relief against Defendant as follows:

a. Declaring that Mr. Su has a valid claim against the bankruptcy estate of Defendant Debtor;

b. Declaring that such valid claim is entitled to an administrative claim in the amount of

the value of the loss of Mr. Su's intellectual property rights pursuant to 11 U.S.C. § 503;

c. Declaring that Defendant Debtor transferred property rights to a buyer that did not lawfully belong to Defendant Debtor;

d. Declaring that Mr. Su's alleged personal liability to Defendant lenders shall be equitably adjusted downward, reduced, and offset in an amount equal to the value of Mr. Su's lost intellectual property rights;

e. Declaring Mr. Su is entitled to the monetary value of the loss of his intellectual property rights in the amount of no less than $100 million, plus interest at a rate of 8.25% and awarding damages to Plaintiff in such an amount;

f. Awarding Mr. Su the sale proceeds allocable to his intellectual property rights, including pre-judgment interest;

g. Awarding Mr. Su an equitable adjustment of his guaranty liability, if any, to the Defendant lender in an amount that is greater of (i) the monetary value of the loss of his intellectual property rights, or (ii) the sale proceeds allocable to Mr. Su's intellectual property;

h. Awarding Mr. Su's reasonable attorneys' fees, expenses, and costs; and

i. Such other relief that the Court deems just and equitable.

Respectfully submitted,

By: */s/ Annie E. Catmull*
ANNIE E. CATMULL
State Bar No. 00794932
Tx Fed ID: 19615
5847 San Felipe, Suite 2200
Houston, Texas 77057
Telephone: (713) 977-8686
Facsimile: (713) 735-4135

OF COUNSEL:

Hoover Slovacek LLP
EDWARD L. ROTHBERG
State Bar No. 17313990
DEIRDRE CAREY BROWN
State Bar No. 24049116
TX Federal ID: 570838
5847 San Felipe, Suite 2200
Houston, Texas 77057
Telephone: 713.977.8686
Facsimile:  713.977.5395