IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| HSIN CHI SU, § § **Plaintiff,** § § vs. § § MEGA INTERNATIONAL § COMMERCIAL BANK CO., LTD, in its § individual capacity and its capacity as § agent for various lenders, CHINATRUST § COMMERCIAL BANK CO., LTD., LAND § BANK OF TAIWAN, CHANG HWA § COMMERCIAL BANK CO., LTD., BANK § SINOPAC COMPANY LIMITED, § TAIWAN COOPERATIVE BANK LTD., § FIRST COMMERCIAL BANK, TAIWAN § SHIN KONG COMMERCIAL BANK, § TAICHUNG COMMERCIAL BANK, § JPMORGAN CHASE BANK, N.A., § MACQUARIE BANK LIMITED, FORE § ERISA MULTI STRATEGY FUND LTD., § OCM FORMOSA STRAIT HOLDINGS, § LTD., C WHALE CORPORATION, AND § PARTICIPATING LENDERS JOHN § DOE(S) § § **Defendants.** § | Case No. 14 Civ. 2165 |

**WILMINGTON TRUST, NATIONAL ASSOCIATION'S**
**MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...............................................................................................1

STATEMENT OF UNDISPUTED MATERIAL FACTS ....................................................3

    I.     The Parties ..................................................................................................................3

    II.    The Facility Agreement and Guarantee ...................................................................4

    III.   The Principal Debtor's Default Under the Facility Agreement .............................5

    IV.   The Entry of Payment Order on the Guarantee in Taiwan .....................................6

    V.    The Principal Debtors' Commencement of Bankruptcy Proceedings ....................7

    VI.   Amounts Due Under the Facility Agreement and Guarantee ................................7

    VII.  Demand for Payment on Mr. Su .................................................................................8

    VIII. Mr. Su's Failure to Pay ...............................................................................................8

LEGAL STANDARD ..............................................................................................................8

ARGUMENT .............................................................................................................................9

    I.     Wilmington Trust Is Entitled to Summary Judgment on Its Counterclaim ............9

CONCLUSION .......................................................................................................................10

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Celotex Corp.* v. *Catrett*,
   477 U.S. 317 (1986)..................................................................................................8–9

*Medlock* v. *Ace Cash Exp., Inc.*,
   589 F. App'x 707 (5th Cir. 2014) ..................................................................................8

*WestRM-West Risk Mkts.* v. *Lumbermens Mut. Cas. Co.*,
   314 F. Supp. 2d 229 (S.D.N.Y. 2004) ...........................................................................9

**FEDERAL RULES**

Fed. R. Civ. P. 56(a) ...........................................................................................................1, 8

Defendant and Counterclaim-Plaintiff Wilmington Trust, National Association, in its capacity as successor agent and successor security trustee for the lenders under for the syndicated loan on the *M.V. C Whale* (in such capacities, "Wilmington Trust" or the "Agent"),[1] through its undersigned counsel, Mayer Brown LLP, hereby moves for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, on its counterclaims against Plaintiff and Counterclaim-Defendant Hsin Chi Su.

## PRELIMINARY STATEMENT

This is an action to enforce a guarantee agreement against Hsin Chi Su ("Nobu Su" or "Mr. Su"). In return for securing tens of millions of dollars in loans from a syndicated loan group, Mr. Su promised to personally repay these monies if his company (now a debtor in possession in jointly administered bankruptcy cases pending before the Hon. Marvin Isgur) could not. In short, he guaranteed to the banks that he would personally repay a loan on which the obligor defaulted. Although not required, the Agent first looked to the collateral—the vessel—to secure repayment for the banks before turning to the guarantee. The vessel has been sold and the indebtedness reduced by that portion of the purchase price payable or creditable against the debt, but there remains several million dollars under the loan that is due and owing. Despite notice and demand, Mr. Su has failed make any payment to the Agent to whom he promised and guaranteed the amount owing to the lenders. As a result, Wilmington Trust, in its capacity as Agent for those lenders in the loan facility, is entitled to summary judgment on the guarantee

---

[1] The defined term "Agent" shall refer to Wilmington Trust or its predecessor-in-interest, Mega International Commercial Bank Co., Ltd., as appropriate.

claim.  Mr. Su guaranteed a loan on which the obligor defaulted, and the lenders to whom he made a guarantee are entitled to summary judgment.

As this Court is aware, Mr. Su formerly controlled TMT Procurement Corporation and its affiliated debtors in bankruptcy (collectively, "TMT").  One of those affiliates relevant here was a special purpose entity ("SPE") formed for the purpose of owning a sophisticated oceangoing cargo vessels, known as a "Whale," roughly the size of a very large crude carrier or VLCC.  The SPE was loaned approximately $84 million dollars (US$) by a syndicated group of foreign lending institutions to be used for the construction and purchase of a particular Whale vessel, in this case the *M.V. C Whale*.  To that end, the SPE entered into a separate facility agreement with the lenders for the Whale vessel it purchased.  The lenders, however, wanted to ensure that they would be repaid in full if the SPE borrower defaulted on its obligations under the facility agreement.  Accordingly, Mr. Su memorialized his promise to repay the lenders and he signed a separate guarantee with the Agent.  In the guarantee, Mr. Su—in his personal capacity—irrevocably and unconditionally agreed to repay the Agent, for the benefit of the lenders, any and all amounts outstanding under the facility agreement if the SPE-borrower defaulted.

Wilmington Trust, as Agent for the lenders on the C Whale Vessel, seeks to enforce Mr. Su's obligation and to collect any and all amounts outstanding under the facility agreement.  There is no genuine dispute as to a material question of fact.  It is undisputed that Mr. Su entered into the guarantee, the borrower defaulted, the lenders were not made whole, and Mr. Su is liable for the difference after reducing the

indebtedness due to the vessel sale.  Under these undisputed facts, and applicable law, Wilmington Trust is entitled to summary judgment in its favor.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

The facts set forth here, which are not subject to reasonable dispute, are based on the accompanying affidavit of Joshua G. James, dated April 20, 2015 ("James Aff."); the declaration of Charles S. Kelley, dated April 20, 2015 ("Kelley Decl."); and the declaration of James C. C. Huang, dated April 20, 2015 ("Huang Decl."); and their associated documents, all of which are filed simultaneously herewith.

**I.      The Parties**

1.      Mr. Su "is a natural person and is a Taiwanese citizen."  (Answer to Pl.'s Compl. & Countercls. of Def. Wilmington Trust ("Wilmington Trust's Countercls.") ¶ 3; admitted in Mr. Su's Answer & Affirmative Defenses to Wilmington Trust's Countercls. ("Mr. Su's Answer") ¶ 16.)

2.      Wilmington Trust is a national banking association chartered under the laws of the United States, with its main office in Wilmington, Delaware, and appears here in its capacity as successor agent and successor security trustee for the syndicated lenders on the loan made to C Whale Corporation.  (James Aff. ¶ 3.)

3.      Effective August 11, 2014, Wilmington Trust entered into an assignment and adoption of rights agreement whereby it succeeded Mega International Commercial Bank Co., Ltd. ("Mega Bank") as agent and security trustee with respect to certain indebtedness regarding C Whale Corporation.  (James Aff. ¶ 4; James Ex. 6.)[2]

---

2     All references to "James Ex." are references to those exhibits attached to the *Affidavit of Joshua G. James in Support of Wilmington Trust, National Association's Motion for Summary Judgment* filed substantially contemporaneously herewith.

3

4. On August 28, 2014, Wilmington Trust filed a notice of these assignments with the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") in Case 13-33763.  (James Aff. ¶ 6; Kelley Decl. ¶ 3; Kelley Ex. 1 (Bankr. ECF No. 2151).[3])

5. On December 1, 2014, Mega Bank and Wilmington Trust caused notice of the agency and security trustee assignment to be given to Mr. Su in accordance with the Notice of Change of Address provided by Mr. Su.  (James Aff. ¶ 7; Kelley Exs. 2–3.)

## II.   The Facility Agreement and Guarantee

6. In a Facility Agreement dated June 2, 2010, various financial institutions loaned an aggregate of $84,000,000 to C Whale Corporation for the construction and purchase of a maritime cargo vessel known as the *M.V. C Whale* (the "C Whale Facility Agreement").  (James Ex. 1.)

7. Mr. Su is a guarantor under and signatory to a "Guarantee" Agreement dated June 21, 2010, under the C Whale Facility Agreement (the "C Whale Guarantee"). (James Ex. 2.)

8. Mr. Su entered into this Guarantee in his personal capacity, and thus represented as follows:  "Mr. Hsin Chi Su hereby expressly confirms that he is issuing this Guarantee independently and not as a director, supervisor or any other capacity with representative authority of TMT or [C Whale Corporation], and that his

---

[3] All references to "Kelley Ex." are references to those exhibits attached to the *Declaration of Charles S. Kelley in Support of Wilmington Trust, National Association's Motion for Summary Judgment* filed substantially contemporaneously herewith.

4

liability hereunder shall not be limited by Article 753-1 of the [Republic of China] Civil Code." (James Ex. 2 at ¶ 3(r).)

9. In this Guarantee, Mr. Su "irrevocably, absolutely and unconditionally guarantee[s], . . . as a primary obligor and not merely as a surety, the due, punctual and full payment of any and all indebtedness and the due and punctual performance of all other obligations of [C Whale Corporation] under" the Facility Agreement, "whether as principal, interest, fees or otherwise, including, without limitation, all costs and expenses of enforcement or preservation of the rights" of the parties to that Agreement. (James Ex. 2, at 1.)

10. Mr. Su also agreed in the Guarantee that he would, "[i]n the event of non-payment by [C Whale Corporation] of any of the Obligations when due, . . . pay[] the unpaid amount to the Agent . . . to such account and in such place as the Agent may from time to time designate . . . , together with interest thereon from the date of demand to the date of actual payment thereof at the default interest rate as specified in the [C Whale] Facility Agreement, free and clear of and without set-off or deduction for taxes or otherwise." (James Ex. 2, ¶ 2(a).)

11. On August 28, 2014, Wilmington Trust became the Agent under the C Whale Facility Agreement and is the party entitled to sue to enforce the Guarantee related thereto. (James Aff. ¶¶ 4–5.)

### III. The Principal Debtor's Default Under the Facility Agreement

12. On March 26, 2013, Mega Bank sent a Notice of Default and Acceleration to C Whale Corporation, among others. (James Aff. ¶ 8; James Ex. 3.)

13. The borrower—C Whale Corporation—had defaulted under its Facility Agreement on account of certain payment defaults. (James Ex. 3.) The default

5

constituted an "Event of Default" under the Facility Agreement, and the Event of Default had occurred and was continuing as of the date on which the Agent, on behalf of the lenders, duly accelerated and declared that the loan and all other amounts under the finance documents were immediately due and payable. (James Ex. 3.)

14. In the Notice of Default and Acceleration, Mega Bank demanded that C Whale Corporation immediately repay the then-principal outstanding sum of $63,000,000 plus interest. (James Ex. 3.)

15. The borrower did not comply in any respect with the demand to immediately repay the principal outstanding sum, plus interest. (James Aff. ¶ 9.) Nor did the guarantor comply. (James Aff. ¶ 9.)

**IV.    The Entry of Payment Order on the Guarantee in Taiwan**

16. In or about April 2013, an application for the issuance of payment orders against Mr. Su, in his personal capacity as guarantor, with respect to his liabilities under the C Whale Guarantee, was submitted to the Taipei District Court in the Republic of China (Taiwan) (the "ROC Court"). (Huang Decl. ¶ 7.)

17. The ROC Court thereafter issued a payment order (the "Payment Order") setting forth (i) the parties and their statutory representatives, (ii) the object of the claims and the amounts thereof, and (iii) the legal relationships/facts giving rise to such claims, among other things. (Huang Decl. ¶ 13; James Ex. 7.)

18. In accordance with ROC law, the ROC Court served the payment order on Mr. Su and afforded him an opportunity to object. (Huang Decl. ¶¶ 9–14.) Had Mr. Su objected, civil proceedings under ROC law would have been deemed commenced. (Huang Decl. ¶ 10.) Mr. Su, however, did not object to the payment orders, and, accordingly, the ROC Court issued a final certificate ("Final Certificate")

confirming that the payment order became final and conclusive under ROC law. (Huang Decl. ¶ 14.)

19. The Payment Order with respect to the C Whale Guarantee was issued on May 23, 2013, was corrected on May 31, 2013, was delivered on June 19, 2013, and affirmed on July, 2013. (Huang Decl. ¶ 14.) The ROC Court issued the relevant Final Certificate on July 15, 2013. (Huang Decl. ¶ 14.)

**V.    The Principal Debtors' Commencement of Bankruptcy Proceedings**

20. On June 20, 2013, C Whale Corporation filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code in the Bankruptcy Court. (Kelley Ex. 4.)

21. As of the date of this motion, the borrower has not repaid all amounts outstanding its Facility Agreement. (James Aff. ¶ 9.)

**VI.    Amounts Due Under the Facility Agreement and Guarantee**

22. On June 13, 2014, the Bankruptcy Court entered an order approving the sale of the *M.V. C Whale* free and clear of claims and interests pursuant to 11 U.S.C. § 363 in the amount of $58,742,250, the majority of which was payable or creditable against the outstanding indebtedness under the Facility Agreement.[4] (Kelley Ex. 5, ¶ B; James Aff. ¶ 11.) On that date, the aggregate outstanding principal amount under the C Whale Facility Agreement was $63,000,000. (Kelley Ex. 5, ¶ E; James Aff. ¶ 10.)

23. As of the date of filing of this motion, not less than $10,336,413.82 remains outstanding and unpaid under the C Whale Facility Agreement, inclusive of

---

[4] Differences in purchase price and applicable proceeds to the first priority mortgage to the lenders are certain transaction costs that were paid by the purchasers in cash and were not amounts that were applied to reduce the indebtedness.

principal, accrued and unpaid interest (including default interest) and certain fees, costs and expenses related to the enforcement of the rights of the lenders, but exclusive of certain other fees, costs and expenses related to the enforcement of the rights of the lenders. (James Aff. ¶ 12.) This amount is therefore also owed under the Guarantee, together with continuing interest, fees, costs and expenses incurred by the lenders related to enforcement of their rights under these agreements.

24. Interest continues to accrue on the outstanding unpaid amounts at the applicable rates and terms set forth in the Facility Agreement.

## VII. Demand for Payment on Mr. Su

25. Demand for payment under the Guarantee was made on Mr. Su pursuant to the C Whale Guarantee on April 2, 2013. (James Ex. 4; James Aff. ¶ 8.)

## VIII. Mr. Su's Failure to Pay

26. Mr. Su has failed to pay any of the amounts outstanding under the C Whale Facility Agreement and the C Whale Guarantee. (Wilmington Trust's Cls. at ¶ 17; admitted in Mr. Su's Answer at ¶ 47; James Aff. ¶ 9.)

## **LEGAL STANDARD**

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists only if the "'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Medlock* v. *Ace Cash Exp., Inc.*, 589 F. App'x 707, 708 (5th Cir. 2014) (quoting *Royal* v. *CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013)). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record]

which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets that burden, the onus shifts to "the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.

## ARGUMENT

### I. Wilmington Trust Is Entitled to Summary Judgment on Its Counterclaim

The guarantee at issue in this matter is governed by the laws of the Republic of China ("ROC").  (James Ex. 2, ¶ 3(o).)  To prevail on a claim to enforce a guarantee under ROC law, a plaintiff must show:  (1) execution of a legally valid, binding and enforceable guarantee; (2) the principal debtor's failure to perform its obligations; and (3) the creditor's valid demand for performance of the guarantee obligation in accordance with the terms and conditions of the guarantee.  (Huang Decl. ¶ 4.)[5]

Each of these elements is met in this case.  In particular, there is no genuine dispute as to any of the following material facts:

- Mr. Su duly executed the C Whale Guarantee.  (*See supra* ¶¶ 7–10.)

- The C Whale Guarantee is legally valid, binding and enforceable.  (*See id.*)

---

[5] The elements to prevail on a claim to enforce a guarantee under ROC law are substantially similar to the elements necessary to prevail on such a claim under state law in the United States.  *See, e.g.*, *WestRM-West Risk Mkts.* v. *Lumbermens Mut. Cas. Co.*, 314 F. Supp. 2d 229, 232 (S.D.N.Y. 2004) (New York law) ("In cases involving notes, guaranties, and surety bonds, an obligee establishes its prima facie case by demonstrating the execution of the obligation at issue, the underlying agreement, and the defendant's failure to pay.").

- C Whale Corporation has defaulted on its obligations under the facility agreement to which it is a party. (*See supra* ¶¶ 12–13.)

- Wilmington Trust's predecessor-in-interest, Mega Bank, made valid demand on Mr. Su for performance of his obligations under the C Whale Guarantee, and as successor agent and successor security trustee, Wilmington Trust is entitled to pursue collection thereunder. (*See supra* ¶¶ 11, 14–15, 25.)

- Mr. Su has failed to perform under the C Whale Guarantee. (*See supra* ¶ 26.)

- A court of appropriate jurisdiction in the Republic of China (Taiwan) has issued final and conclusive payment orders on the C Whale Guarantee. (*See supra* ¶¶ 16–19.)

Accordingly, Wilmington Trust has met its burden of showing the absence of any genuine dispute of material facts relevant to its counterclaim in this action and, under ROC law, is entitled to judgment as a matter of law on that counterclaim.

## CONCLUSION

For the reasons set forth above, Wilmington Trust respectfully requests that this Court grant Wilmington Trust's motion for summary judgment and enter judgment in favor of Wilmington Trust, as successor agent and successor security trustee for the lenders, in the amount of $10,336,413.82 as of April 20, 2015, on the C Whale Guarantee counterclaim, plus continuing interest, fees and other costs and expenses.

.

Dated: April 20, 2015                                  Respectfully Submitted,

                                                       **MAYER BROWN LLP**

                                                       /s/ Charles S. Kelley
                                                       Charles S. Kelley (Attorney-in-Charge)
                                                       Texas State Bar No. 11199580
                                                       700 Louisiana Street, Suite 3400
                                                       Houston, Texas 77002-2730
                                                       (713) 221-1651 (telephone)
                                                       (713) 224-6410 (facsimile)

                                                       *Attorneys for Wilmington Trust, National Association, as successor agent and successor security trustee*

Of Counsel:
Frederick Hyman
Mayer Brown LLP
1221 Avenue of the Americas
New York, NY 10020-1001
(212) 506-2500 (telephone)
(212) 262-1910 (facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that on April 20, 2015, a true and correct copy of the foregoing document was served by the Electronic Case Filing system for this Court, which gives notice to all parties who have requested ECF notification of this proceeding.

/s/ Charles S. Kelley
Charles S. Kelley